IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KARRY WHITTEN; | |
| Plaintiff, | **4:24CV3145** |
| vs. | |
| CITIBANK, N.A. et. al.; | **MEMORANDUM AND ORDER** |
| Defendants. | |

Before the Court is Defendant Citibank, N.A.'s ("Citibank") Motion to Compel Arbitration. Filing No. 11.[1] For the reasons set forth herein the Court grants Citibank's motion and stays further proceedings.

## BACKGROUND

The undisputed facts before the Court are set forth herein. On or about January 17, 2025, Plaintiff submitted to Citibank an application for a Citi/AAdvantage Executive World Mastercard. Filing No. 13-1. At the time Plaintiff filled out the application, all applications for this type of credit card with Citibank indicated the applicant agreed to a card agreement. Filing No. 13-1. As a result of the application, on January 21, 2015, Citibank mailed Plaintiff a notice of new account approval for a credit card with an account number ending in 4020. Filing No. 13-2. The card agreement, to which Plaintiff agreed when filling out the

---

[1] There is a split of authority on the issue, but judges within the District of Nebraska have held that motions to arbitrate are non-dispositive and can be ruled on by a magistrate judge. *See All. Grp., Inc. v. Zurich Am. Ins. Co.*, No. 8:21CV188, 2021 WL 5325883, at *1 (D. Neb. Nov. 16, 2021) ("This Court agrees with those courts holding that 'a motion to compel arbitration is a non-dispositive motion' and can be decided by a magistrate judge.").

application for the credit card, was enclosed with the notice. Filing No. 13-3. Relevant provisions of this agreement are set forth below:

> This Agreement is binding on you unless you close your accounts within 30 days after receiving the card and you have not used or authorized use of the card.

Filing No. 13-3 at 1.

> We may change the . . . terms of this Agreement from time to time as permitted by law. The changes may add, replace, or remove provisions of this Agreement. We will give you advance written notice of the changes and a right to opt out to the extent required by law.

Filing No. 13-3 at 3.

ARBITRATION

> *PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.* IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION.
> . . .
> *Agreement to Arbitrate:* Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute or controversy between you and us (called "Claims").

Claims Covered

> What Claims are subject to arbitration? All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law;
> . . .
> Whose Claims are subject to arbitration? Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user

of your account, an employee, agent, representative, affiliated
company, predecessor or successor, heir, assignee, or trustee in
bankruptcy.

. . .

Broadest interpretation. Any questions about whether Claims are
subject to arbitration shall be resolved by interpreting this arbitration
provision in the broadest way the law will allow it to be enforced.

. . .

Filing No. 13-3 at 4.

On October 18, 2016, Citibank sent a letter to Plaintiff regarding updates to
the card agreement. Filing No. 13-4. The letter referenced the account ending in
4020. Filing No. 13-4. This letter stated Plaintiff had "the choice to reject the
arbitration provision" and, in order to do so, needed to send a "rejection letter" to
Citibank on or before December 22, 2016. Filing No. 13-4 at 1. The parties agree
that Plaintiff did not send Citibank a rejection letter.

Updates to the credit card agreement provided in October 2016 include the
following:

ARBITRATION

PLEASE READ THIS PROVISION OF THE AGREEMENT
CAREFULLY.

This section provides that disputes may be resolved by binding
arbitration . . . This arbitration provision is governed by the Federal
Arbitration Act (FAA) and shall be interpreted in the broadest way the
law will allow.

Covered claims
  o *You or we may arbitrate* any claim, dispute or controversy
    between you and us arising out of or related to your Account, a
    previous related account or our relationship (called "Claims").
  o If arbitration is chosen by any party; neither you nor we will have
    the right to litigate that Claim in court or have a jury trial on that
    Claim.

Except as stated below; all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law . . . This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you . . .

Filing No. 13-4 at 15.

Plaintiff continued to use the Credit Card to make purchases and payments after December 22, 2016. Filing No. 13-5.

Citibank underwent a conversion which changed Plaintiff's account number in April 2020. Filing No. 21-1 at 2. Despite the change in account number, Citibank attests the credit card remained the Citi/AAdvantage Executive World Mastercard and was a continuation of the account originally ending in 4020. Filing No. 21-1 at 3.

Plaintiff has set forth no evidence that an agreement, other than one submitted by Citibank governs and, further, sets forth no evidence that she is not, in fact, bound by the agreements submitted by Citibank.

On August 19, 2024, Plaintiff filed the complaint alleging claims against Citibank regarding violations of the Fair Debt Credit Reporting Act and the Fair Credit Report Act. Filing No. 1. Plaintiff also makes claims against LVNV Funding, LLC, ("LVNV") who she alleges is a debt collector. LVNV filed an answer on October 18, 2024. Filing No. 7. LVNV has not taken a position regarding the pending motion.

## ANALYSIS

### I.    Standard of Review

In deciding a motion to compel arbitration where the parties rely on matters outside the pleadings, the Court applies a standard akin to summary judgment. *Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002) ("The FAA does not expressly identify the evidentiary standard a party seeking to avoid compelled arbitration must meet. But courts that have addressed the question have analogized the standard to that required of a party opposing summary judgment under Rule 56(e) of the Federal Rules of Civil Procedure."); *see also Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018). Therefore, the Court will "view[] the evidence in the light most favorable to the nonmoving party" and grant the motion if "'there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law.'" *DeLuna v. Mower Cty.*, 936 F.3d 711, 716 (8th Cir. 2019) (quoting *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010).

The nonmoving party "receives the benefit of all reasonable inferences supported by the evidence but has the 'obligation to come forward with specific facts showing that there is a genuine issue for trial.'" *Atkinson v. City of Mt. View, Mo.*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cty., Minn.*, 621 F.3d 740, 743 (8th Cir. 2010)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

### II.    Agreement to Arbitrate

### A. Undisputed Evidence

The present dispute before the Court is whether the agreements submitted by Citibank are, in fact, the current agreement between the parties. Plaintiff has

5

submitted no evidence that an agreement other than the agreements submitted by Citibank govern their relationship. Plaintiff also did not submit evidence demonstrating she did not agree to the terms of the aforementioned agreements or that she rejected the arbitration provision in the updated agreement provided by Citibank.

Rather, Plaintiff's primary argument in opposition to the pending motion is that Citibank's evidence contains insufficiencies and, as such, Citibank has failed to fulfill its burden. Namely, Plaintiff argues Citibank's conversion of American Airlines branded products "in an effort to offer additional benefits", in conjunction with the differing account numbers, shows the agreements in evidence are not the governing agreements (and thus there is no evidence of a binding arbitration provision). Plaintiff also argues that, pursuant to 12 C.F.R. § 1026.6 ("Regulation Z"), Citibank was required to send a new account agreement out when the "additional benefits" were provided. Filing No. 25 at 3.

The undersigned will first address Plaintiff's burden argument. As mentioned above, the standard on a motion to compel arbitration is akin to a motion for summary judgment. While it is true that the movant has the initial burden, that burden can be may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case. *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)). The Eighth Circuit has further held that, in order "[t]o survive summary judgment, a plaintiff 'must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.'" *Rickard v. Swedish Match North America, Inc.*, 773 F.3d 181, 184 (8th Cir. 2014) (quoting *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)); *see also Davis v. City of Little Rock*, 122 F.4th 326, 329 (8th Cir. 2024) ("This Court does not 'accept unreasonable inferences or sheer

speculation as fact.'"). "'The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial.'" *Davis,* 122 F.4th at 332 (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)).

Citibank has provided the Court with undisputed evidence of both an original and updated agreement between Plaintiff and Citibank. Citibank has also provided the Court with undisputed evidence indicating these agreements govern the relationship. As mentioned above, Plaintiff has provided no evidence indicating there is a different agreement that governs the relationship between the parties and, further, no evidence that she rejected the arbitration agreement. The undersigned recognizes the account numbers of Plaintiff's credit card has changed. However, Citibank submitted evidence explaining that discrepancy, which Plaintiff disputes with only hypothetical questions and speculation. The hypothetical questions and speculation concerning the evidence are not enough. *See Rickard,* 773 F.3d at 186 (dismissing various claims at the summary judgment stage when the plaintiff's evidence consisted solely of his own conjecture and speculation); *Davis,* 122 F.4th at 331 (dismissing claim finding that speculation did not show a violation).

Next Plaintiff argues that, because Regulation Z requires a new account agreement to be sent in certain circumstances, Citibank's change to the "additional benefits" would result in a new agreement. Plaintiff contends this is enough to question whether the agreements provided in evidence do, in fact, govern their relationship. Title 12 C.F.R. Section 1026.9(b)(2) states:

> . . . whenever a credit feature is added or a credit access device is mailed or delivered to the consumer, **and the finance charge terms for the feature or device differ from disclosures previously given**, the disclosures required by 1026.6(a)(1) or (b)(3)ii)(A), as applicable, that are applicable to the added

> feature or device shall be given before the consumer uses the
> feature or device for the first time.

Here, there is no evidence indicating Citibank made any changes to the finance charge terms of the Account. In fact, Citibank's evidence indicates Plaintiff's account remained "unchanged", other than the identifying numbers associated with the Account, which was done in order to provide accountholders with additional "benefits." Again, Plaintiff has not offered evidence indicating a new agreement was sent and that such agreement governs the parties' relationship.

### B. Validity and Scope of Agreement

The FAA provides "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983). The plain language of the agreements and evidence before the court indicates the agreements involves a transaction involving commerce.

In reviewing a motion to compel arbitration, the Court must determine "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Robinson v. EOR-ARK, LLC,* 841 F.3d 781, 783-84 (8th Cir. 2016) (quoting *Faber v. Menard, Inc.,* 367 F.3d 1048, 1052 (8th Cir. 2004)). The Court must grant a petition to compel arbitration "if a valid arbitration clause exists which encompasses the dispute between the parties." *3M Co. v. Amtex Sec., Inc.,* 542 F.3d 1193, 1198 (8th Cir. 2008). Whether a valid arbitration agreement exists is a question of state contract law. *Donaldson*

*Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009). As mentioned herein, the parties are not disputing the validity of the arbitration agreement submitted to the Court.

The Court will briefly address the validity of the arbitration agreement. Citibank has produced evidence that it sent Plaintiff not once, but twice, agreements which contained arbitration provisions. The second agreement expressly provided Plaintiff with the opportunity to opt out of the arbitration provision and the evidence before the Court indicates Plaintiff did not opt out. Moreover, after receiving the second agreement containing the arbitration provision, and not opting out, Plaintiff continued to use the Credit Card. *See Schmitt v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 2022 WL 671472 (D. Neb. March 7, 2022) (finding an agreement to arbitrate was valid when, even though the original agreement between the company and plaintiff did not contain an arbitration provision, the company mailed the plaintiff a modification of their agreement, that plaintiff did not reject the arbitration clause, and plaintiff continued to use the card after such failure to reject the arbitration clause). The Court finds there is a valid arbitration agreement between the parties.

Despite Plaintiff's reliance, this case is factually distinct from *Cox v. Midland Funding, LLC*, No. 1:14-CV-1576-LMM-JSA, 2015 WL 12862931 (N.D. Ga. June 11, 2015). In *Cox*, the defendant produced no evidence affirmatively showing any document containing an arbitration provision was sent to the plaintiff when he was actively using the card. *Id.* at 8. The only evidence of an arbitration provision being provided to plaintiff was after plaintiff had discontinued use of the credit card and was merely paying the card's balance. *Id*.

Finally, the Court considers whether the claims at issue are encompassed by the arbitration agreement. When determining whether an arbitration agreement encompasses a certain claim, a court must first determine "whether an arbitration

clause is broad or narrow." *Parm*, 898 F.3d at 874 (citing *Unison Co. Ltd. V. Juhl Energy Development, Inc.*, 789 F.3d 816, 818 (8th Cir. 2015). "If a clause is broad, the liberal federal policy favoring arbitration agreements requires that a district court send a claim to arbitration as long as the underlying factual allegations simply touch matters covered by the arbitration provision." *Parm,* 898 F.3d at 874 (internal citations and quotes omitted).

When an arbitration provision covers claims "arising out of" or "relating to" an agreement, such arbitration clause is broad. *Parm,* 898 F.3d at 874. Both arbitration agreements state they are to be construed in "the broadest way the law will allow." Filing No. 13-3 at 4; Filing No. 13-4 at 3. This, along with the indication that the arbitration clause covers "any claim . . . arising out of or related to . . ." indicates the arbitration provision at issue is broad. Plaintiff alleged Citibank violated the Fair Debt Credit Reporting Act and Fair Credit Report Act. The allegations in the complaint also make clear that these alleged violations relate to a current or former account Plaintiff held with Citibank. The allegations in the Complaint clearly "touch" the matters covered by both arbitration provisions and the undersigned finds it appropriate to compel Plaintiff's claims against Citibank to arbitration.

## III.    LVNV Funding, Inc.

Arbitration under the FAA "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he had not agreed to submit." *AT&T Techs., Inc. & Commc'ns Workers*, 475 U.S. 643, 648 (1986). A non-signatory cannot be forced into arbitration unless there is some evidence that the non-signatory consented to arbitration. *Flink v. Carlson*, 856 F.2d 44, 46 (8th Cir. 1988). There is no indication that LVNV was a party to the arbitration agreement and they do not move to compel arbitration. Given that the claims against LVNV will remain before the Court, the Court must determine whether to stay their claims

or allow them to proceed normally. *J.B. Hunt Transport, Inc. v. Steadfast Ins. Co.*, 470 F.Supp.3d 936 (W.D. Ark. 2020). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The Eighth Circuit has found that it "makes eminent sense" to stay proceedings involving third parties to an arbitration agreement "when the third-party litigation involves common questions of fact that are within the scope of the arbitration agreement." *Contracting Nw., Inc. v. City of Fredericksburg*, 713 F.2d 382, 387 (8th Cir. 1983). To determine whether to expand a stay to nonarbitrable claims pending the completion of arbitration, courts weigh three factors: (1) the risk of inconsistent rulings; (2) the extent to which the parties will be bound by the arbitrator's decision; and (3) the prejudice that may result from delay. *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co.*, 242 F.3d 777, 783 (8th Cir. 2001).

  The legal and factual issues underlying the claims against LVNV overlap substantially with those underlying the claims against Citibank. Both the plaintiffs' claims against LVNV and Citibank revolve around whether Citibank accurately assessed their credit report and whether LVNV reasonably used that credit report to collect debts. The Court finds Plaintiff's claims against LVNV and Citibank contain common questions of fact. It is very likely that a ruling from the arbitrator on the dispute between Plaintiff and Citibank will impact the outcome of litigation between Plaintiff and LVNV.  Judicial resources would be best conserved by staying this matter in its entirety. Thus, the Court will stay the entirety of these proceedings pending the results of the arbitration between Plaintiff and Citibank.

  For the reasons set forth herein,

  IT IS SO ORDERED:

1. Defendant's Motion to Compel Arbitration Filing No. 11 is granted. Plaintiff and Citibank are directed to proceed to arbitration in accordance with the terms of their agreement.

2. This case, including claims against LVNV Funding, LLC, is stayed pending the outcome of Plaintiff and Citibank's arbitration.

3. Plaintiff and Citibank shall file a joint status report regarding the progress of arbitration every ninety (90) days beginning June 3, 2025.

4. The Clerk of the court is directed to set an initial status report deadline of June 3, 2025.

Dated this 5th day of March, 2025.

BY THE COURT:

*s/ Jacqueline M. DeLuca*
United States Magistrate Judge