IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KARRY WHITTEN

Plaintiff,

vs.

CITIBANK N.A., et al.

Defendants.

4:24CV3145

MEMORANDUM AND ORDER

Before the Court is a motion filed by Plaintiff seeking a court order directed at Defendant Citibank, N.A. ("Citibank") requiring Citibank to prove, through various types of information outlined by Plaintiff, the declarations of Kelly Booth previously submitted as part of this litigation are not fraudulent. Filing No. 35. Also before the Court is Citibank's Motion to File Sur-Reply. Filing No. 45. For the reasons below, Plaintiff's motion will be granted in part and denied in part. Citibank's motion to file sur-reply will be granted.

## BACKGROUND

On August 19, 2024, Plaintiff filed a Complaint against Citibank and Defendant LVNV Funding, LLC ("LVNV"). Filing No. 1. Regarding Citibank, Plaintiff alleged claims regarding violations of the Fair Debt Credit Reporting Act and the Fair Credit Reporting Act. Filing No. 1. Plaintiff also alleged claims against LVNV, who she alleged was a debt collector. On November 15, 2024, Citibank filed a motion to compel arbitration. After full briefing, this Court entered an order granting

1

Citibank's motion. Filing No. 28. In support of its motion, Citibank provided the Court with two affidavits of Kelly Booth ("Booth Declarations"), one dated November 15, 2024 ("November Declaration") and one dated December 10, 2024 ("December Declaration"). These affidavits are at issue in this motion.

When it compelled arbitration, the Court ordered the parties provide it with periodic status updates. After two joint status reports, Plaintiff had yet to file arbitration and, as such, the Court ordered an expedited status report in thirty days, which required the parties to explain, in detail, the reason for the delay in filing arbitration. On October 9, 2025, the day the joint status report was due, Citibank provided a status report and Plaintiff filed the pending motion. Arbitration has not yet been commenced.

Plaintiff's motion and supporting brief requests the Court "require defendants to provide the Court the provenance of the Declarations submitted in this action." Filing No. 35. In support of this relief, Plaintiff avers the Booth Declarations were forged, improperly electronically executed, and contain misrepresentations based upon a declaration filed by co-Defendant LVNV in a separate action ("State Court Declaration"). Attached to the State Court Declaration is a card agreement bearing the account number ending in *4335 which appears to have been issued to Plaintiff in October 2020. The alleged misrepresentation in the Booth Declarations (specifically the December Declaration) relates to what card agreement is controlling for the purposes of this litigation and the motion to compel arbitration. However, oddly enough, Plaintiff admits that both the agreement referenced by Booth in her declarations, the October 2016 agreement, and the October 2020 agreement contain the same arbitration language. Plaintiff seemingly asks the Court for relief pursuant to the Federal Rules of Civil Procedure, the Court's inherent powers and to protect the integrity of the Court. Filing No. 36.

In response, Citibank argues the Booth Declarations are not inconsistent with the declaration filed by co-Defendant LVNV in the separate state court action

regarding Plaintiff's account and, further, points out there is no information, outside of Plaintiff's counsel's speculation, that Booth's signatures were forged or otherwise compromised. Filing No. 37. Citibank also argues Plaintiff had access to all the information she now relies on when she originally responded to the motion to compel arbitration and, as such, Plaintiff waived these arguments by not raising them in response to the original motion to compel arbitration. Filing No. 37.

Plaintiff's reply brief then pivots, arguing for the first time in this matter that LVNV, not Citibank, is the only one who has standing to move to compel arbitration. Filing No. 44. Plaintiff contends he did not waive these arguments when he failed to raise them during the motion to compel arbitration because they implicate subject-matter jurisdiction and cannot be waived.[1] Filing No. 44. Plaintiff attempts to characterize the standing argument as responsive to arguments set forth in Defendant's response brief, but the Court has significant doubts, even with the most generous reading of the arguments. *See* NECivLR 7.1(c)(2). Nevertheless, the Court considers them, to the extent that are in any way relevant, as set forth herein.

In response to Plaintiff's newly raised arguments, Citibank moves for leave to file a sur-reply brief and attaches its brief to said motion. Filing Nos. 45; 45-1. Plaintiff does not oppose this motion. *See* Filing No. 49. The Court finds the arguments discussed in Plaintiff's reply brief are raised for the first time and grants Citibank's motion for sur-reply. Filing No. 45. The sur-reply brief found at Filing No. 45-1 is deemed filed *instanter* and need not be refiled. To the extent the new arguments are addressed here, the Court considers Citibank's sur-reply brief.

---

[1] Plaintiff appears to conflate the concepts of standing and subject-matter jurisdiction. The Court has subject-matter jurisdiction as the claims, as alleged by Plaintiff, arise under federal statute including the Fair Debt Credit Reporting Act and the Fair Credit Reporting Act. Filing No. 1.

3

## ANALYSIS

To the best the undersigned can tell, Plaintiff's original motion is a motion for sanctions pursuant to this Court's inherent powers and/or a motion pursuant to Fed. R. Civ. P. 60(b) for either newly discovered evidence or purported misrepresentation or misconduct by an opposing party. The Court addresses both herein.

### I. Rule 60

Under Rule 60(b), a court may grant a party relief from a final order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> 
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> 
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> 
> (4) the judgment is void;
> 
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> 
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Relief under the catchall provision, Rule 60(b)(6), is available only in "extraordinary circumstances." *Buck v. Davis*, 137 S. Ct. 759, 777-78 (2017) (quoting *Gonzalez v. Crosby*, 545 U.S. 524 (2005)).

While Plaintiff's requested relief is information related to the provenance of the Booth Declarations, she ultimately seeks relief from the from the Court's March 5, 2025, Order. Filing No. 28. While Plaintiff fails to cite any rule, she appears to rely on Rule 60(b)(2), newly discovered evidence, or Rule 60(b)(3), fraud,

misrepresentation, or misconduct by an opposing party. To the extent Rule 60(b) applies, the Court finds no basis for relief.

Plaintiff attempts to rely on "newly discovered evidence" as the basis for her motion but, as Citibank points out, nearly all of the declarations Plaintiff uses in an attempt to discredit Booth's declaration signatures were dated prior to Plaintiff's response in opposition to the motion to compel arbitration.[2] Moreover, any arguments that Booth's electronic signature did not comply with this Court's local rules was available at the time of the motion and has now been waived. *See* NECivR 11.1(2)(B) ("A nonfiling signatory or party who disputes i) the authenticity of an electronically filed document with a nonattorney signature or ii) the authenticity of the signature on a document must file an objection within 7 days of receiving the NEF."). Plaintiff does not argue how or why she could not have discovered this information with reasonable diligence at the time of the motion to compel arbitration. *See Kansas City Area Transp. Authority v. State of Mo.*, 640 F.2d 173, 175 (8th Cir. 1981).

In the newly raised arguments, Plaintiff also appears to contend that the state court declaration and corresponding agreement, which is new to this case, illustrates that Citibank lacks standing to enforce the arbitration clause against Plaintiff because Citibank allegedly assigned its rights to LVNV, including the right to enforce the arbitration clause. Filing No. 44 at 2. First, it is worth noting that the

---

[2] Upon review of the dates each declaration was filed with each respective court it appears only three declarations were filed after Plaintiff's opposition. However, this is three of sixteen declarations with Booth's signature on it. These three declarations, in conjunction with the other thirteen declarations, are solely used by Plaintiff to argue Booth's signature was forged, per the lay opinion of Plaintiff's counsel. The documents related to a real estate transaction involving Booth (which go to the forged signature argument) also pre-date Plaintiff's opposition to the motion to compel arbitration. Finally, the declaration upon which Plaintiff bases its standing argument was filed nearly a year and a half before Plaintiff filed her opposition to the motion to compel arbitration.

affidavit in question was signed and submitted[3] in June 2023 and Plaintiff was a party to that action. That filing predates the filing of the present action. Second, Plaintiff necessarily knew there was an assignment of Citibank's interest in Plaintiff's account when initiating this suit against LVNV. See Filing No. 1 (affirmatively alleging LVNV was a purchaser of the account). This information, and any argument as to the survivability of Citibank's rights to compel arbitration, were available to Plaintiff at the time of the original motion to compel. Finally, as Citibank points out, the arbitration survivability clause of the October 2020 agreement is the same as the survivability clause of the October 2016 agreement. Any argument as to this issue would not change even were the Court to find the October 2020 agreement was controlling. Ultimately, the Court finds these arguments untimely.

The undersigned finds that all of Plaintiff's arguments relating to newly discovered evidence are untimely and were available to Plaintiff at the time of the original motion to compel arbitration. To the extent Plaintiff is basing her motion on Rule 60(b)(2), the motion is denied.

Perhaps more on point with Plaintiff's allegations is Rule 60(b)(3) based on the alleged misrepresentation or misconduct of Citibank. "To prevail on a Rule 60(b)(3) motion, [the movant] must show, 'with clear and convincing evidence, that the opposing party engaged in a fraud or misrepresentation that prevented the movant from fully and fairly presenting its case.'" Harley v. Zoesch, 413 F.3d 866, 870 (8th Cir. 2005) (quoting Atkinson v. Prudential Prop. Co., Inc., 43 F.3d 367, 372-73 (8th Cir. 1994)).

---

[3] The affidavit submitted by Plaintiff's counsel states that it was filed in the state court action in June 2020. This appears to be a clerical error as the card agreement was allegedly issued in October 2020 and the state court affidavit was signed on June 1, 2023. See Filing No. 42. A review of the state court docket reveals the document was filed on June 27, 2023. See LVNV Funding LLC v. Karry Whitten, No. 22 16516 (Cnty. Ct. of Douglas Cnty., Neb. filed October 13, 2022); See also, Stutzka v. McCarville, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (Court "may take judicial notice of judicial opinions and public records").

First, how the alleged misrepresentation, misconduct, or fraud prevented Plaintiff from fully and fairly presenting its case is unclear when Plaintiff herself admits that, even had Citibank presented the October 2020 agreement, the arbitration clause is the same and the Court's analysis would not have changed. *See* Filing No. 36 at 9. The arbitration clause language in the October 2020 agreement is identical to that which the Court relied upon in its order compelling arbitration.

Second, Plaintiff has not presented clear and convincing evidence that Citibank, or its counsel, engaged in fraud or misrepresentation. Plaintiff provides no evidence outside of her counsel's analysis of Booth's signatures observed on various declarations and his conclusions that they appear different and, therefore, must be forged. This "evidence" is not sufficient. Frankly, the undersigned sees minor differences between the signatures and, without expert testimony, does not find clear and convincing evidence to grant Plaintiff's requested relief. *See Matter of* Dedrick, 2023 WL 2192525 at *4 (D. Neb. Feb. 23, 2023) ("Like virtually all judges, I have had no formal training in handwriting analysis. I agree that the two signatures are not exactly the same but they are also not so clearly distinct as to suggest a forgery."). This is particularly the case when the undersigned believes (and Plaintiff seems to suggest it also believes) Booth's signatures on the declarations were electronically generated. Filing No. 35 p. 9. Additionally, Citibank has submitted yet another declaration of Kelly Booth explaining that she is a real human, did review the declarations, and applied her electronic signature to both declarations. Filing No. 38-1. This is far more convincing than counsel's handwriting analysis.

## II. Sanctions pursuant to Inherent Powers

To the extent Plaintiff moves for sanctions pursuant to this court's inherent authority based on the alleged forgery of Booth, much of the Court's reasoning is the same. While the court may impose sanctions based upon its inherent authority

to control its own judicial proceedings, the authority should be used sparingly. *Sentis Group, Inc. v. Shell Oil Co.*, 559 F.3d 888, 899-900 (8th Cir. 2009) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) ("Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion.")). For the same reasons discussed above, the Court does not find a basis to issue sanctions based upon an allegedly forged signature.

### III. Operative Agreement

Even though the motion to compel arbitration was filed over a year ago, and this Court issued its ruling, there is apparently still no consensus on what agreement was operative for the purposes of the arbitration determination. Plaintiff contends that Ms. Booth's December Declaration provides that the October 2016 card agreement is the operative agreement, and that discovery of the October 2020 card agreement illustrates a contradiction with her declaration. Defendant, on the other hand, argues that Plaintiff mischaracterizes Ms. Booth's December Declaration and that the declaration simply clarifies the change in card number but does not say that future cardmember agreements with Plaintiff did not exist. Filing No. 37 at 8.

Both parties miss the mark. First, the Court agrees that the December Declaration does not specifically state the October 18, 2016 card agreement is the operative card agreement, as Plaintiff contends. However, at the time of the motion to compel, Citibank did *argue* that the declaration stood for the proposition that the October 2016 card agreement was controlling. *See* Filing No. 27 p. 4 ("The evidence establishes that Plaintiff's inferences are false and the 2016 agreement is controlling." (heading); "Nowhere does the Declaration suggest there is a new card agreement; to the contrary, the Declaration states the opposite – everything beyond a new card and new number was the same, which would include the account agreement.").

This leaves open the questions of: (1) why Citibank's attorneys made this representation if Booth truly was not representing the 2016 agreement governed the account at issue[4]; and (2) whether the 2020 agreement, attached to the State Court Declaration, was a card agreement issued to Plaintiff by Citibank and whether this agreement governs this lawsuit.

The relief requested by Plaintiff is much too expansive and the arguments are largely misplaced. Nonetheless, the evidence produced, and positions taken by Citibank, cause the undersigned pause. As such, Cititbank will be ordered to provide a declaration from one of its representatives outlining—and attaching—all agreements governing the account at issue from 2016 through today's date. Citibank should take a position on what agreement is controlling.

IT IS ORDERED:

1. Plaintiff's motion for miscellaneous relief, Filing No. 35, is granted in part and denied in part as set forth herein.
2. Citibank's motion to file sur-reply, Filing No. 45, is granted.
3. Citibank shall file a declaration and supporting evidence of the cardmember agreements, as set forth herein, on or before January 28, 2026.

---

[4] It is, at a minimum, illogical for Citibank to submit a card agreement as part of its motion to compel arbitration if it knew that it was not the operative agreement. The arguments Citibank now makes in defense of Booth's December Declaration almost imply as much. It is much more likely that the October 2020 agreement (if an authentic revised card agreement) was overlooked due to human error. The submissions as ordered herein should clarify as much.

9

Dated this 29th day of December, 2025.

BY THE COURT:

*s/ Jacqueline M. DeLuca*

United States Magistrate Judge

10